FRIEDMAN & SPRINGWATER LLP
JANE K. SPRINGWATER (S.B. NO. 100284)
STEFANIE A. ELKINS (S.B. NO. 249839)
33 New Montgomery Street, Suite 290
San Francisco, CA 94105
Telephone Number: (415) 834-3800
Facsimile Number: (415) 834-1044
Email: jspringwater@friedmanspring.com
Email: selkins@friedmanspring.com

JENNER & BLOCK LLP
VINCENT E. LAZAR (*pro hac vice* pending)
LANDON S. RAIFORD (*pro hac vice* pending)
353 N. Clark Street
Chicago, IL 60654-3456
Telephone Number: (312) 923-2989
Facsimile Number: (312) 840-7389
Email: VLazar@jenner.com
Email: LRaiford@jenner.com

Attorneys for Creditor
Universal Music Investments, Inc.

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>Exigen (USA), INC.<br><br>    Debtor. | Case No. 13-32281 DM<br><br>Chapter 11<br><br>**MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE OR TO CONVERT CASE TO CHAPTER 7**<br><br>Date: December 13, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 22<br>    235 Pine Street, 22nd Floor<br>    San Francisco, CA<br>Judge: Dennis Montali |

    Universal Music Investments, Inc. ("UMI") respectfully moves this Court for entry of

an order appointing a chapter 11 trustee for the bankruptcy estate of Exigen (USA), Inc. (the

"Debtor") under sections 105(a) and 1104 of title 11 of the United States Code (the

"Bankruptcy Code"), or in the alternative to convert the above-captioned case to a case under chapter 7 of the Bankruptcy Code pursuant to section 1112(b) of the Bankruptcy Code.

This motion is based upon the motion, the notice of motion, the declaration of John A. Sensing (the "Sensing Declaration") and the Request for Judicial Notice ("Judicial Notice Request") filed herewith.

In support of this motion, UMI respectfully represents as follows:

**INTRODUCTION**

1. The Debtor commenced this bankruptcy case in a failed attempt to stop a $22.4 million judgment from being entered against the Debtor in a breach of contract lawsuit pending in Delaware state court. The Debtor has no operating business to reorganize, and with the exception of UMI, the significant other alleged creditors of the Debtor are all related parties.

2. The Debtor's only meaningful assets are litigation claims that Debtor's management is hopelessly conflicted from investigating and pursuing for the benefit of the estate: (1) fraudulent transfer claims against "Exigen" affiliates controlled by the same management, and (2) a third-party trade secret and defamation lawsuit with respect to which other "Exigen" entities controlled by the same management are asserting competing interests to any proceeds. Debtor's management is irredeemably conflicted from investigating and pursuing these claims in fulfillment of the Debtor's fiduciary duties, so this Court should either appoint a chapter 11 trustee or convert the case to a case under chapter 7.

**JURISDICTION**

3. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2). To the extent this Court does not have constitutional authority to enter a final judgment absent consent, UMI consents to this Court's entry of a final order on this motion.

4. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for relief are sections 105(a), 1104(a) and 1112(b) of the Bankruptcy Code and Rule 9014 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

<u>The UMI Contract Litigation</u>

6. On February 12, 2010, UMI commenced a lawsuit against the Debtor seeking liquidated damages in the Superior Court of Delaware, *Universal Music Investments, Inc. v. Exigen (USA), Inc.*, C.A. No. 10C-02-044 (FSS) (the "UMI Contract Litigation"). A copy of the complaint initiating the UMI Contract Litigation, redacted in accordance with an order of the court in Delaware, is attached as Exhibit A to the Sensing Declaration.

7. During the course of the UMI Contract Litigation, the Debtor defended against the contract claim and asserted counterclaims. Following the completion of the first phase of discovery, the Debtor moved to dismiss UMI's claims and for partial summary judgment on its counterclaims on August 7, 2012. The court denied that motion on November 20, 2012, and ordered discovery to proceed on the remaining issues. Thereafter, on November 30, 2012, the Debtor sought to replace its counsel and requested a 60-day stay in order to find replacement counsel. New counsel did not appear until March of 2013, and at the next hearing in the UMI Contract Litigation on April 12, 2013, the court warned the Debtor against substituting counsel again.

8. On August 26, 2013, as fact discovery was about to close, the Debtor informed the Delaware court that its counsel wished to withdraw and requested another stay. On

August 29, 2013, the court set a thirty-day deadline for the Debtor to substitute counsel for a second time, but substitute counsel never appeared on the Debtor's behalf.

9. On October 17, 2013, the Superior Court of Delaware entered a $22.4 million judgment against the Debtor in the UMI Contract Litigation. A copy of the judgment is attached as Exhibit B to the Sensing Declaration. Judge Silverman's signature appears at the top of such judgment order. On October 18, 2013, the Superior Court entered a corrected judgment order correcting an obvious typographical error in paragraph 5 of the October 17 judgment order. A copy of the corrected judgment is attached as Exhibit C to the Sensing Declaration.

The Fraudulent Transfer Litigation

10. On September 9, 2013, UMI commenced a second lawsuit against the Debtor and its affiliates Exigen Ltd. and Exigen Capital L.P. in the Chancery Court of Delaware, *Universal Music Investments, Inc. v. Exigen (USA), Inc., et al.*, C.A. No. 8875-VCP (the "Fraudulent Transfer Litigation"). The complaint filed in the Fraudulent Transfer Litigation alleges that the Debtor has fraudulently transferred what appears to be most (or even all) of its assets to other "Exigen" entities, and sought (among other things) to avoid those fraudulent transfers. A copy of the complaint initiating the Fraudulent Transfer Litigation is attached as Exhibit C to the Sensing Declaration.

11. The Fraudulent Transfer Litigation was pending against the Debtor and certain of its affiliates as of the petition date. The fraudulent transfer claims asserted therein are now property of the Debtor's estate that may be pursued for the benefit of all creditors.

12. On information and belief, the individuals serving as Debtor's management are directly or indirectly employed by, or serve a management role for, the affiliated Exigen

entities (Exigen Capital and Exigen Ltd.) that are defendants in the Fraudulent Transfer Litigation. For example, Alexander Novak, who is the Debtor's president and has been designated as the individual responsible to fulfill the duties and obligations of the debtor in possession (*see* Dkt. 17), is a principal of Exigen Capital, which is: the Debtor's ultimate parent company; the owner of the other "Exigen" entities; and a defendant in the Fraudulent Transfer Litigation. *See* Exigen Capital's website, biographical page of Alexander Novak, at: www.exigencapital.com/team/investment_team/alexander_novak.html (last visited November 14, 2013).[1] Judicial Notice Request Exhibit 1; Judicial Notice Request Exhibit 2 at ¶¶ 3 and 4.

The Bankruptcy Case

13. Approximately four hours after the October 17, 2013 judgment was entered against it in the UMI Contract Litigation, the Debtor filed a chapter 11 petition commencing this case (the "Bankruptcy Case"). The petition was signed by Sergiy Synyanskyy, one of the Debtor's directors. [Dkt. No. 1.]

14. The docket in this chapter 11 bankruptcy case is spartan. Even though the Debtor's chapter 11 bankruptcy case has been pending for close to one month, until this week the Debtor had not filed any pleading that even provided a description of the Debtor's business or its assets.

15. Moreover, several of the Debtor's submissions are materially inaccurate. The petition identifies liabilities of $1-10 million, even though UMI's liquidated claim alone exceeds $22 million. In fact, the Debtor did not ever list UMI as a creditor (*see* Dkt. No. 1), despite the facts that the Debtor had been litigating with UMI for three years and a that the judgment had been entered on October 17, 2013. The Debtor did not correct this deficiency

---

[1] To date, the Debtor has not file its schedules, statement of financial affairs or any pleading identifying its other officers and directors, or the sources of their compensation.

when it filed an amended list of the holders of the twenty largest unsecured claims on October 20, 2013. [Dkt. No. 12].

16. The Debtor proposes to finance its chapter 11 case using a super-priority $175,000 debtor-in-possession loan from its parent corporation, Exigen Capital, L.P., which also is the source of (and includes) the $50,000 retainer already paid to the Debtor's counsel. [Dkt. 20, par. 11a.] As a condition to the loan, the Debtor proposes to release all claims against Exigen Capital, including those asserted in the Fraudulent Transfer Litigation [Dkt. 20, par. 11l.] As noted above, Exigen Capital is a defendant in the Fraudulent Transfer Litigation, and is the owner of the other "Exigen" entities asserting an interest in the Genesys Litigation proceeds. Other than UMI, the vast majority of the Debtor's alleged creditors are related entities. [Dkt. 20, par. 14.]

The Genesys Litigation

17. The Debtor is one of fourteen "Exigen" plaintiffs in a trade secret and defamation lawsuit captioned *Exigen Properties, Inc., et al v. Genesys Telecommunications Laboratories, Inc., et al.*, Case No. CIV481741, currently pending in the Superior Court of the State of California in and for the County of San Mateo (the "Genesys Litigation"). All fourteen "Exigen" plaintiffs are asserting an entitlement to any damages awarded in the litigation. Judicial Notice Request Exhibit 2.

18. On information and belief, one or more members of Debtor's management serve as directors, officers or employees of many (if not all) of the other "Exigen" plaintiffs in the Genesys Litigation, which include Exigen Properties, Inc.; Exigen Services, Ltd.; Exigen Services (USA), Inc.; Exigen Ltd.; Exigen (Canada), Inc.; Exigen Latvia (SWH Tehnologija); Exigen Europe, BV; Exigen Deutschland, GmbH; Exigen Services Europe Limited; Exigen East

B.V.; Exigen Services Pacific Pty Limited; Exigen Services, LLC; and Foreign Enterprise Exigen Services.[2] Judicial Notice Request Exhibit 2 at ¶¶ 3 and 4.

**ARGUMENT**

**I.     The Court Should Appoint A Trustee In The Bankruptcy Case**

Section 1104(a) of the Bankruptcy Code provides that the Court shall order the appointment of a chapter 11 trustee: (1) "for cause," or (2) "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. §1104(a)(1) and (2). Satisfying either of these independent grounds requires the appointment of a chapter 11 trustee. *Lowenschuss v. Selnick (In re Lowenschuss),* 171 F.3d 673, 685 (9th Cir. 1999). Here, appointment of a trustee is required under both the "for cause" test and the "best interests" test.

    A.    Cause Exists For The Appointment Of A Trustee Because The Debtor's Current Management Is Completely Conflicted.

While §1104(a)(1) provides a list of factors that constitute "cause" for which a chapter 11 trustee must be appointed ("including fraud, dishonesty, incompetence, or gross management"), that list is not exhaustive. *See 11 USC §102(3)* ("In this title . . . 'includes' and 'including' are not limiting."). *See also In re Marvel Entm't. Group, Inc.*, 140 F.3d 463, 472 (3d Cir. 1998); *In re Madison Mgmt. Group, Inc.*, 137 B.R. 275, 281 (Bankr. N.D. Ill. 1992). Cause also exists to appoint a trustee where a debtor's management has "significant, inherent conflicts" which prevent those managers from exercising fiduciary duties on behalf of the debtor-in-possession. *In re SunCruz Casinos, LLC*, 298 B.R. 821, 830 (Bankr. S.D. Fla. 2003); *see also In re Eurospark Indus., Inc.*, 424 B.R. 621, 629 (Bankr. E.D.N.Y. 2010)

---

[2] As noted above, the Debtor has failed to file its schedules, statement of financial affairs or any pleading that would identify its officers and directors, or the sources of their compensation.

("It is well established that courts may appoint a chapter 11 trustee where a debtor-in-possession's management has a conflict of interest that interferes with its ability to fulfill its fiduciary duties to the estate.") In such cases, the appointment of a chapter 11 trustee is required "to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served." *SunCruz*, 298 B.R. at 828.

Here, Debtor's management suffers from precisely the type of "significant, inherent conflicts" that requires the appointment of a trustee. The members of the Debtor's management team are fiduciaries for or employed by affiliates that are directly adverse to the Debtor's interests with respect to the Debtor's only meaningful assets – the fraudulent transfer claims and the Debtor's interests in the Genesys Litigation. Indeed, even though the Court has indicated that it will not approve the terms of the proposed DIP financing, those terms reveal that very conflict; in exchange for a $175,000 loan, which includes the $50,000 already paid to Debtor's counsel and of which at least another $25,000 (and potentially much more) would be used to reimburse Exigen Capital for its legal expenses, the Debtor proposes to release all of the fraudulent transfer claims against Exigen Capital, before any party can even investigate the merits of those claims. In fact, any funding from an affiliated entity, regardless of its terms, exacerbates the inherent conflict because the only significant assets of the estate consist of claims against those entities or interests held by those entities in the Genesys Litigation.

Courts routinely appoint a trustee where a debtor's management cannot satisfy both its obligations to the Debtor and to third parties at the same time. *See, e.g.*, *In re Cajun Elec. Power Co-op, Inc.*, 74 F.3d 599, 600 (5th Cir. 1996) (chapter 11 trustee appointed where debtor's board members were managers of other utility companies) (*adopting dissent in* 69

F.3d 746 (5th Cir. 1995); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1221 (3d Cir. 1989) (affirming appointment of trustee where "the bankruptcy court questioned the current management's ability to fulfill its fiduciary duty to pursue [preference or fraudulent conveyance claims] since [the debtor] shares common management with the recipients of the transfers, who also owe conflicting fiduciary duties to the recipients."); *In re Veblen West Diary LLP*, 434 B.R. 550, 555 (Bankr. D.S.D. 2010) (ordering appointment of trustee "to assess the case for possible voidable pre-petition preferences and fraudulent or constructively fraudulent conveyances."); *In re Ridgemour Meyer Properties, LLC*, 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008) ("An independent trustee should be appointed . . . when [a chapter 11 debtor and its managers] suffer from material conflicts of interest and cannot be counted on to conduct independent investigations of questionable transactions in which they were involved.").

Here, the conflicts of interest are even more pronounced because the Debtor has no business operations and no liquid assets, so therefore the diligent, honest and unconflicted pursuit of causes of action becomes even more paramount to creditor recoveries. *See In re PRS Ins. Group, Inc.*, 274 B.R. 381, 388 (Bankr. D. Del. 2001) (finding cause to appoint trustee where "[t]he prosecution of [possible fraudulent transfer actions against debtors' controlling manager] is one of the only significant assets that the Debtor has.").

The Debtor's current management cannot pursue these claims consistent with their fiduciary duties, given that do so they would have to investigate and bring fraudulent transfer and other claims against the Debtor's affiliates (and potentially even themselves); would need to seek to minimize or eliminate any Genesys Litigation recovery allocated to affiliated "Exigen" entities for which they also serve as directors, officers or employees; and would

need to investigate and likely challenge the validity of the $8.9 million in purported related-party unsecured claims. Given these limitations, cause plainly exists to appoint a trustee for the Debtor's estate.

      B.    <u>Appointment Of A Trustee Would Be In The Best Interests Of The Debtor's Estate And Creditors.</u>

This Court also should appoint a trustee under §1104(a)(2) because such appointment is in the best interests of the Debtor's estate and its creditors. Given the singular importance of the Debtor's causes of action to the estate, it is vital that an unbiased and unconflicted estate representative investigate the estate's avoidance actions and other claims, and manage the litigation decisions for the Debtor's estate. Where, as here, irreconcilable conflicts exist because management also owes duties to the adverse parties (and in fact may be targets of claims), a trustee must be appointed under §1104(a)(2). *See, e.g. In re Basil Street Partners*, 477 B.R. 856, 868 (Bankr. M.D. Fla. 2012) (ordering appointment of trustee under §1104(a)(2) where the debtor's management "would be present on both sides of the dispute"); *In re BLX Group, Inc.*, 419 B.R. 457, 472 (Bankr. D. Mont. 2009) (same); *In re Ridgemour Meyer Properties, LLC*, 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008) ("An independent trustee should be appointed under §1104(a)(2) when [the debtor's managers] suffer from material conflicts of interest, and cannot be counted on to conduct independent investigations of questionable transactions in which they were involved.").

Further, given that the Debtor has no ongoing business operations, there is no counter-balancing concern to be weighed in determining whether appointment of a trustee could negatively impact the day-to-day business operations of a debtor. *See In re Nat'l Staffing Servs, LLC*, 338 B.R. 31, 34 (Bankr. N.D. Ohio 2005) (trustee appointed under §1104(a)(2) where the debtor was not engaged in an operating business and the debtor's only

significant asset was a litigation claim); *In re PRS Ins. Group LLC*, 274 B.R. at 388 ("Further, the Debtor has no business operations; the appointment of a trustee, therefore, can have no disruptive effect.").

Finally, the Debtor's proposed source of funding for this case creates even more problems. Mr. Novak, the Debtor's designated responsible person, has a direct financial interest in Exigen Capital; Exigen Capital is a defendant in the Fraudulent Transfer Litigation; and Exigen Capital is the owner of the other "Exigen" entities asserting an interest in the Genesys Litigation proceeds. Thus, literally every aspect of this chapter 11 case is fraught with irreconcilable conflicts.

Here, the interests of Debtor's management and creditors always will be at odds. Given the fundamental divergence of interests, allowing Debtor's management to control the Debtor's estate will produce a bankruptcy case fraught with conflict. Courts, recognizing the drawbacks to a bankruptcy case destined for gridlock, have held that when a debtor's management of an estate will produce certain and entrenched acrimony, appointment of a trustee is appropriate. *Marvel*, 140 F.3d at 472; *In re Colorado-Ute Elec. Ass'n*, 120 B.R. 164, 170 (Bankr. D. Colo. 1990).

In sum, it plainly is in the best interests of the Debtor's estate and its creditors that a trustee be appointed. As the court in *In re Tel-Net Hawaii, Inc.* noted, "[a]n entity cannot adequately serve two masters." 105 B.R. 594, 595 (Bankr. D. Haw. 1989). The Court cannot in this case reasonably expect the Debtor impartially to investigate transfers that UMI believes the Debtor made to entities that control or are affiliates of the Debtor, or where the Debtor's management holds allegiance to such entities. It would be even more difficult for the Debtor, after receiving any funding from its ultimate parent, to investigate such parent

and initiate a fraudulent conveyance action against such parent or such parent's subsidiaries or other affiliates. A trustee must be appointed to ensure that the Debtor's causes of action are properly investigated and controlled by an estate representative that does not have an irreconcilable conflict.

## II. In The Alternative, The Bankruptcy Case Should Be Converted To A Case Under Chapter 7 Of The Bankruptcy Code.

Section 1112(b) provides that if a party-in-interest establishes cause, a bankruptcy court shall convert a chapter 11 case to a case under chapter 7 or dismiss the case, whichever is in the best interests of the debtor's creditors and the estate. 11 U.S.C. §1112(b)(1).

The same reasons that support the appointment of a chapter 11 trustee (the inherent and irreconcilable conflicts facing management, and the fact that the Debtor has no ongoing operations) also support the conversion of the case to a case under chapter 7. *See, e.g. In re TP, Inc.*, 455 B.R. 455, 458-59 (Bankr. E.D.N.C. 2011) ("Obviously, there is substantial overlap between § 1104(a)(1) and the factors determining whether the court should, under § 1112(b)(1), convert or dismiss for cause."); *In re Vaughan*, 429 B.R. 14 (Bankr. D.N.M. 2010) (finding debtor's refusal to explain prepetition transfers, failure to file accurate schedules, and lack of an ongoing business as cause to appoint a chapter 11 trustee or for conversion).

In addition, it is well-established that conversion is required where the bankruptcy petition was not filed in good faith. *In re Chu*, 253 B.R. 92, 95-98 (S.D. Cal. 2000). "The test [of good faith] is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). In determining whether a debtor acted in good faith, a court examines "a variety of circumstantial factors such as

whether: (1) the debtor only has one asset; (2) the debtor has an ongoing business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case is essentially a two-party dispute capable of prompt adjudication in state court." *In re St. Paul Self Storage L.P.*, 185 B.R. 580, 582-83 (9th Cir. B.A.P. 1995); *see also In re Chu*, 253 B.R. 92, 95 (S.D. Cal. 2000) (listing similar considerations).

Here several "bad faith" indicators are present. The Debtor's only assets are its fraudulent transfer claims and its interests in the Genesys Litigation, and there was no business-related reason to commence the bankruptcy proceeding. Indeed, it is clear from its timing that the bankruptcy filing was a failed attempt to thwart entry of judgment against the Debtor in the UMI Contract Litigation. The Debtor also has no cash flow or any other source of income that can be used to sustain a chapter 11 case, propose a liquidation plan (which as this Court has noted likely could not be confirmed over UMI's objection in any event) or provide creditors with adequate protection. Given these facts, it is likely impossible for the Debtor to propose a "speedy, efficient reorganization on a feasible basis." *In re Marsch*, 36 F.3d at 828.

While UMI believes that the appointment of a chapter 11 trustee may be the better alternative for creditors, the hallmarks of this bankruptcy case – a debtor with no operating business files a bankruptcy in the face of an imminent judgment, and its first step forward is an attempt to secure broad releases for the benefit of its parent corporation to the detriment of creditors – also supports conversion of the case to one under chapter 7. *See In re Consolidated Pioneer Mortg. Entities*, 264 F.3d 803, 808-09 (9th Cir. 2001); *In re Walter*,

108 B.R. 244, 248 (Bankr. S.D. Cal. 1989). Therefore, UMI requests in the alternative that the Bankruptcy Case be converted to a case under chapter 7 of the Bankruptcy Code.

WHEREFORE, for the reasons set forth herein, UMI respectfully requests that the Court enter an Order directing the appointment of a chapter 11 trustee or, in the alternative, the conversion of the Bankruptcy Case to a chapter 7 case, and for such other and further relief as is proper and just.

DATED: November 15, 2013                FRIEDMAN & SPRINGWATER LLP

                                        By: */s/ Jane K. Springwater*
                                            Jane K. Springwater
                                            Attorneys for Creditor
                                            UNIVERSAL MUSIC INVESTMENTS, INC.