MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor-in-Possession,
EXIGEN (USA), INC.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No. 13-32281-DM-11 |
| EXIGEN (USA), INC., | Chapter 11 |
| Debtor. | COMBINED CHAPTER 11 PLAN AND DISCLOSURE STATEMENT<br>(Dated December 13, 2013) |

## INTRODUCTION

This Combined Chapter 11 Plan and Disclosure Statement provides for the restructuring of the debts and the liquidation of the assets of EXIGEN (USA), INC., Debtor-in-Possession herein. If confirmed, this Plan will bind all creditors provided for in this Plan, whether or not they file a proof of claim or accept this Plan, and whether or not their claims are allowed.

You may be entitled to vote on the Plan, or to object to confirmation of the Plan or final approval of the Disclosure Statement. **Ballots must be received by Debtor's counsel, and objections to the Plan or Disclosure Statement must be filed with the Court, on or before _____. A hearing on confirmation of the Plan and final approval of the Disclosure Statement will be held on _____.** All creditors should refer to Part 2 of this Plan for information regarding the precise treatment of their claims, and to Part 8 for voting instructions. No statements concerning the Debtor or its assets are authorized other than those set forth herein.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney

1

to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the terms of the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as all obligations under the Plan are performed. If there is a default, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. This Plan does not provide for a discharge of debts.

**PART 1**
**SUMMARY OF PLAN**

This Plan provides for the creation of a Liquidating Trust, to be administered by a Liquidating Trustee, to prosecute certain pending litigation and to sell or otherwise dispose of assets of the estate and distribute the net proceeds to general unsecured creditors *pro rata*. The Liquidating Trustee will be [to be determined prior to the hearing on tentative approval of the disclosure statement]. The term of this Plan is five years, unless extended by order of the Court.

**PART 2**
**BACKGROUND**

The within case was commenced by filing a voluntary chapter 11 petition on October 17, 2013. A trustee has not been appointed, and the Debtor is in possession of the estate.

The Debtor is a California corporation that was in the business of licensing software and providing software development, implementation, support and outsourcing services. The Debtor is wholly owned by Exigen, Ltd., a private limited liability exempt company organized under the laws of Bermuda. The sole shareholder of Exigen, Ltd. is Exigen Capital, L.P., a private equity fund organized under the laws of the Cayman Islands ("Exigen Capital").

One of the Debtor's major projects was the development of a music royalty accounting software system that would process, calculate, pay, and account for artist, copyright, and union royalties in the music recording industry. The Debtor was developing this system pursuant to a development agreement with a joint venture called EquaTrax, L.P. ("EquaTrax"). Universal Music Investments, Inc. ("UMI") (an investment vehicle for Universal Music Group) and Exigen

2

Capital are partners in EquaTrax. Universal Music Group was to be an anchor customer of EquaTrax and a user of the software system being developed by the Debtor. UMI has filed an action against the Debtor, now pending as *Universal Music Investments, Inc. v. Exigen (USA), Inc.*, Superior Court for the State of Delaware, New Castle County (Case No. 10C-02-044 (FSS)), in which it alleges that the Debtor failed to deliver a completed software system within the agreed timeframes and seeks $22,000,000 in liquidated damages (the "UMI Litigation"). Resolution of the dispute with UMI could result in an arrangement to complete the project and payment of all claims in full.

In addition, UMI has also sued the Debtor and others in the Delaware Chancery Court, in an action entitled *Universal Music Investments, Inc. v. Exigen (USA), Inc., et al.*, Court of Chancery of the State of Delaware, (Case No. CA 8875), in which it alleges, among other things, that certain interests in EquaTrax belonging to the Debtor were transferred improperly to Exigen Capital.[1] Because of the financial strain and distraction of management attention caused by the UMI lawsuits, the Debtor ceased operating its business.

*Assets*

The Debtor does not possess any cash; all of its assets are illiquid.

Debtor holds three chief assets: (1) accounts receivable worth approximately $100,000 to $200,000;[2] (2) an unliquidated claim against Genesys Telecommunication Laboratories, Inc. ("Genesys"), which is the subject of a lawsuit pending before the California Superior Court for the County of San Mateo as *Exigen (USA), Inc., et al. v. Genesys Telecommunications Laboratories, Inc.* (Case No. CIV481741) (the "Genesys Litigation"); and (3) the Debtor's interest in the development agreement between the Debtor and EquaTrax. There are fourteen (14) plaintiffs in the Genesys Litigation, including the Debtor. The other plaintiffs may be affiliates of the Debtor; however, the Debtor's investigation is ongoing and it reserves all rights with respect

---

[1] UMI has also brought a related action against certain guarantors.

[2] Although the estimated book value of all accounts receivable and intercompany receivables is $7,325,621.00, the Debtor estimates the actual value of its accounts receivable to be $100,000 to $200,000 as most of the receivables are old, some of the account debtors are defunct, and the Debtor assumes that a large number of the receivables will not be collectable.

Case: 13-32281    Doc# 45    Filed: 12/13/13    Entered: 12/13/13 16:24:16    Page 3 of 32

thereto. The Genesys Litigation essentially seeks to recover for (1) false and misleading statements made by Genesys regarding the products and services offered by the plaintiffs in that action (which include the Debtor), and (2) Genesys's aiding and abetting the misappropriation of the plaintiffs' proprietary information and trade secrets. In the lawsuit, Genesys's conduct is asserted to be anti-competitive and part of a scheme to gain an unlawful competitive advantage. The plainitffs, including the Debtor, in the Genesys Litigation expect that their claims may be worth as much as $100 million. The Genesys Litigation is still in its preliminary stages as Genesys has pursued a variety of procedural motions and appeals of the results thereof. Notwithstanding how early it is in the proceedings, the Debtor expects to receive the lion's share of any apportionment of damages and, as a result, has been in control of the litigation.

In addition, there may be other claims against third parties and insiders, including a fraudulent conveyance action (now owned by the estate) pending before the Delaware Court of Chancery as *Universal Music Investments, Inc. v. Exigen (USA), Inc., et al.* (Case No. CA 8875) (the "Fraudulent Conveyance Action") in which UMI alleges, among other things, that certain interests in EquaTrax belonging to the Debtor were transferred improperly to Exigen Capital.

The foregoing assets and the Debtor's other assets are described in the Liquidation Analysis at Part 7, below.

*Liabilities*

The Debtor estimates that general unsecured claims against the Debtor total at least $9.8 million. Approximately $8.9 million of that amount is held by entities that may be affiliates of the Debtor; however, the Debtor's investigation is ongoing and it reserves all rights with respect thereto. These are potentially more than offset by substantial potential claims by the Debtor against the same companies. The balance of unsecured claims (approximately $958,000) are held by third parties consisting primarily of law firms and trade creditors.

The Debtor's contingent and disputed liability on the UMI Litigation is $22,440,900, plus pre- and post-judgment interest. The Debtor disputes this claim. On October 2, 2013, UMI filed a motion for default and dismissal of the Debtor's counterclaims in the UMI Litigation. The

4

motion included a notice of hearing for October 18, 2013 at 9:00 a.m. On October 17, 2013, one day before the hearing was scheduled and the same day the Debtor commenced this bankruptcy case, the Delaware Court entered an order granting UMI's motion for a default on its breach of contract claim and dismissing the Debtor's counterclaims for failure to prosecute (the "Original Order"). One day later, after the Debtor had already commenced this bankruptcy case, the Delaware Court entered a corrected order (the "Corrected Order"). The Original Order and the Corrected Order differ in several material respects: (i) the Original Order provides that "*Exigen* is entitled to pre-judgment and post-judgment interest," whereas the Corrected Order provides that "*UMI* is entitled to pre-judgment and post-judgment interest," (ii) the Original Order is titled "Proposed Order," whereas the Corrected Order is titled "Corrected Order," (iii) the Original Order contains only the judge's electronic signature, whereas the Corrected Order contains the judge's handwritten signature, and (iv) the Original Order contains a blank space in the body of the order for the date on which the Original Order was entered, whereas the Corrected Order has a completed date. Bankruptcy Code section 362 provides that the filing of a chapter 11 petition "operates as a stay, applicable to all entities, of . . . (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced" before the bankruptcy case was filed. The Corrected Order violated the automatic stay. Although a court clerk's act of *entering* an order on a court's docket may come within the ambit of the ministerial acts doctrine, a judge's act of *signing* a court order does not, and thus the second order is void *ab initio*. Moreover, entry of a default and a dismissal of a counterclaim based on that default without a hearing is not a decision on the merits.

The Debtor will file a motion to estimate UMI's claim to be heard prior to confirmation of this Plan.

The Debtor also owes $13,750.97 in priority claims to various taxing authorities. All of the Debtors employees were discharged pre-petition, and the Debtor paid all wages in full when employees were discharged. Two of the Debtor's former directors assert claims for deferred compensation in the total amount of $1.5 million, which the Debtor disputes. The Debtor is not

5

aware of any liens or other encumbrances against any of its assets.

This Plan separately classified UMI's claim on the grounds, *inter alia*, that UMI is embroiled in litigation with the Debtor, that UMI has recourse to certain payment and performance guarantees and that UMI's claim is dissimilar from other unsecured claims, which consist generally of trade credit, unpaid professional fees and claims from affiliates. *Steelcase, Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 328 (9th Cir. 1994); *In re Loop 76*, 465 B.R. 525, 540-541 (9th Cir. BAP 2012).

### *Professionals*

On November 11, 2013, the Debtor filed an application to approve its employment of the law firm of Macdonald Fernandez LLP as counsel for the Debtor. An objection has not been filed, and an order approving said employment has not been entered as of the date hereof. On November 18, 2013, the Debtor filed its application for appointment of the law firm of Cotchett, Pitree & McCarthy, LLP as special counsel to prosecute the Genesys Litigation on a contingency-fee basis providing, *inter alia*, that the firm will be paid 16% of the first $2 million recovered and 26.5% of the balance. (Docket No. 28). On November 21, 2013, UMI filed an objection to said application (Docket No. 35). A hearing on said objection is set for December 19, 2013, at 11:00 am.

### *Sources of Information*

The Debtor was not assisted by an accountant in the preparation of this Plan. The sources of information for the disclosures herein are the Chief Executive Officer and President of the Debtor, Alexander Novak, other members of the Debtor's management and the books and records of the Debtor.

### *Disclaimer: Results May Vary*

Results may vary from the Debtor's projections. The disclosures, estimates and projections made herein are based on the Debtor's best estimates in light of current conditions and past experience. Changes in these and other circumstances may cause the actual results to differ

6

from those projected.

*Present Financial Condition*

The present financial condition of the Debtor is described in the most recent Monthly Operating Report filed with the Court, a copy of which is attached hereto as Exhibit "A" and incorporated by reference [to be attached to copy served on creditors following tentative approval of disclosure statement].

**PART 2**
**CLASSIFICATION AND TREATMENT OF CLAIMS**

Claims are classified below (except for administrative priority claims) for all purposes, including voting, confirmation and distributions pursuant to this Plan. A claim is classified in a particular class only to the extent the claim qualifies within the description of the class and is classified in a different class to the extent that any remainder of the claim qualifies within the description of such different class. A claim is in a particular class only to the extent that the claim is an allowed claim and has not been paid, released or otherwise satisfied before the Effective Date of the Plan. A claim is allowed if: (a) a proof of claim was (i) timely filed or (ii) deemed filed under Bankruptcy Code Section 1111(a), or (iii) filed late with permission of the Court; and (b) Such claim is not disputed, or, if disputed, such claim has been allowed in whole or in part by a final order of the Court, provided that any such claim shall be an allowed claim only to the extent stated in any such order (each such claim is an "Allowed Claim"). The following is a summary of the treatment of each class proposed under this Plan:

| Class | Description | Proposed Treatment | Entitled to Vote? |
|---|---|---|---|
| 1 | General Unsecured Creditors | *Pro Rata* Payment From Net Proceeds of Liquidation | Yes |
| 2 | Litigation Claims | *Pro Rata* Payment From Net Proceeds of Liquidation | Yes |
| 3 | Insider General Unsecured Claims | Subordination; *Pro Rata* Payment From Net Proceeds of Liquidation | Yes |
| 4 | Insider Unsecured Claims with Right of Setoff | Subordination; *Pro Rata* Payment From Net Proceeds of Liquidation | Yes |
| 5 | Equity Interests | Distribution of Remainder | Yes |

7

Disputes regarding proper classification of claims not specifically classified in this Plan shall be resolved pursuant to the procedures established by the Bankruptcy Code, other applicable law and procedures and this Plan; resolution of such disputes shall not be a condition to the confirmation or consummation of this Plan.

**Class 1: General Unsecured Claims**

1. <u>Classification</u>. This class consists of holders of allowed unsecured claims other than UMI, insiders and holders of priority and administrative priority unsecured claims. The holders of general unsecured claims are as follows:

| Creditor | Estimated Claim Amount | Disputed?[3] |
|---|---|---|
| ADP Commercial Leasing | $4,600.00 | No |
| Bouchard Margules & Friedlander, P.A. | $148,645.00 | No |
| Codan Services Limited | $16,635.00 | Yes |
| Conyers Dill & Pearman Limited | $300.00 | Yes |
| Corporation Service Company | $363.00 | No |
| Cotchett Pitre & McCarthy LLP | $23,026.00 | No |
| Cote & Company | $5,000.00 | No |
| DeWinter Consulting, Inc. | $3,297.00 | No |
| Document Technologies, LLC | $177,806.13 | No |
| Employment Screening Resources | $2,594.00 | No |
| Equinox Fitness Clubs | $7,147.00 | No |
| Esther Carlson | $2,683.00 | Yes |
| Financial Executives International | $495.00 | No |
| Fliesler Meyer LLP | $20,182.00 | No |
| Globalinx | $753.43 | No |
| Golden Gate Retirement Consultants | $1,190.00 | No |
| Gordon & Rees, LLP | $4,743.00 | No |

---

[3] This is to disclose whether the Debtor disputes a claim. The Trustee of the Liquidating Trust shall not be bound by such disclosure and may dispute any claim.

Case: 13-32281   Doc# 45   Filed: 12/13/13   Entered: 12/13/13 16:24:16   Page 8 of 32

| | | |
|---|---|---|
| Greenberg Traurig LLP | $46,521.00 | Yes |
| Greg Shenkman | $22,500.00 | Yes |
| Haarmann | $27,186.00 | No |
| Iron Mountain | $3,200.00 | No |
| KBHT Kalus & Hilger | $13,418.00 | No |
| Lexence Advocaten & Notarissen | $9,219.00 | Yes |
| Lextron Systems, Inc. | $16,250.00 | Yes |
| Octopus Investments, Inc. | $5,000.00 | Yes |
| Rowbothan & Company LLP | $4,584.00 | No |
| Sharon Moe Benefit Com Services | $330.00 | No |
| Simmons & Ungar, LLP | $15,397.00 | No |
| T-Mobile | $9,929.00 | No |
| The State Insurance Fund | $210.00 | No |
| Theordore Garcia | $327.00 | No |
| Time Warner | $359,367.00 | Yes |
| TW Telecom, Inc. | $18,019.00 | No |
| Wolters Kluwer Busineses | $398.00 | No |
| Total: | $971,314.56 | |

2.     Treatment.  Holders of claims in this class shall be paid from the net proceeds of the liquidation of estate assets *pro rata* with holders of Class 2 claims.  Claims in this class shall not accrue interest from and after the petition date.  Holders of claims in this class may not take any action to enforce said claims so long as the Trustee of the Liquidating Trust is not in material default under this Plan.

3.     Impairment.  This class is impaired and is entitled to vote upon this Plan.

**Class 2:  Litigation Claims**

1.     Classification.  This class consists of UMI on account of its claim, if allowed.

UMI's claim is disputed.

| Creditor | Estimated Claim Amount | Disputed? |
|---|---|---|
| Universal Music Group, Inc. | $22,440,990.00 | Yes |

2.      Treatment.  Holders of claims in this class shall be paid from the net proceeds of the liquidation of estate assets *pro rata* with holders of Class 1 claims.  Claims in this class shall not accrue interest from and after the petition date.   Holders of claims in this class may not take any action to enforce said claims so long as the Trustee of the Liquidating Trust is not in material default under this Plan.

3.      Impairment.  This class is impaired and is entitled to vote upon this Plan.

**Class 3:  Insider General Unsecured Claims**

1.      Classification.  This class consists of holders of allowed unsecured claims by "insiders," as that term is defined by Bankruptcy Code Section 101(31).  The holders of such claims are as follows:

| Creditor | Estimated Claim Amount | Disputed? |
|---|---|---|
| Exigen Elite | $374,944.00 | No |
| ExpertMarkets Canada, Inc. | $339,225.00 | No |
| ExpertMarkets Canada, Inc. | $8,411.00 | No |
| Total: | $722,580.00 | |

2.      Treatment.  Claims in this class are subordinated to Class 1 and Class 2 claims. Following payment of all Class 1 and Class 2 claims in full, holders of claims in this class shall be paid from the net proceeds of the liquidation of estate assets *pro rata* with holders of Class 4 claims.  Claims in this class shall not accrue interest from and after the petition date.  Holders of claims in this class may not take any action to enforce said claims so long as the Trustee of the Liquidating Trust is not in material default under this Plan.

10

3.    Impairment.  This class is impaired and is entitled to vote upon this Plan; provided, however, that the votes of insiders will not be counted for the purposes of determining whether at least one impaired class has accepted the plan under Bankruptcy Code Section 1129(a)(10).

**Class 4:  Insider Unsecured Claims With Right of Setoff**

1.    Classification.  This class consists of holders of allowed unsecured claims by "insiders," as that term is defined by Bankruptcy Code Section 101(31), who hold a right of setoff against the estate.  The holders of such claims are as follows:

| Creditor | Estimated Claim Amount | Disputed? |
|---|---|---|
| EbIT | $41,393.00 | No |
| ExiFAST Collabra | $933,251.00 | Yes |
| Exigen Capital Management, LLC | $532,996.00 | No |
| Exigen Capital Management, LLC | $11,221,427.00 | Yes |
| Exigen Elite | $374,944.00 | Yes |
| Exigen Insurance Solutions, Inc. | $28,565.00 | No |
| Exigen Insurance Solutions, Inc. | $577,370.00 | No |
| Exigen Services, Ltd. | $7,000,000.00 | Yes |
| Exigen Services, Ltd. | $337,446.00 | No |
| Total: | $21,047,392.00 | |

2.    Treatment.  Holders of claims in this class may setoff valid and enforceable counterclaims against the estate only by serving written notice of the basis therefor and the amount to be setoff to the Trustee of the Liquidating Trust within sixty (60) calendar days of the Effective Date of this Plan.  Such setoff shall be effective without further notice or order of the Court unless the Trustee files an objection with the Court (which shall be treated as a claim objection under Bankruptcy Code Section 502) within thirty (30) calendar days of receipt of said notice.  Claims in this class are subordinated to Class 1 and Class 2 claims.  Following payment

Case: 13-32281    Doc# 45    Filed: 12/13/13    Entered: 12/13/13 16:24:16    Page 11 of 32

of all Class 1 and Class 2 claims in full, holders of claims in this class shall be paid from the net proceeds of the liquidation of estate assets *pro rata* with holders of Class 4 claims. Claims in this class shall not accrue interest from and after the petition date. Holders of claims in this class may not take any action to enforce said claims so long as the Trustee of the Liquidating Trust is not in material default under this Plan.

3.  Impairment.  This class is impaired and is entitled to vote upon this Plan; provided, however, that the votes of insiders will not be counted for the purposes of determining whether at least one impaired class has accepted the plan under Bankruptcy Code Section 1129(a)(10).

**Class 5:  Equity Interests**

1.  Classification.  This class consists of holders of shares of stock in the Debtor. Exigen, Ltd. is the Debtor's sole shareholder.

| Shareholder | Shares Owned |
|---|---|
| Exigen, Ltd. | 100% |

2.  Treatment.  All shares of stock in the Debtor shall be cancelled upon the Effective Date of this Plan.  Following payment of all Class 1, Class 2, Class 3 and Class 4 claims in full, any remaining property of the Liquidating Trust (whether money or other property) shall be distributed to Exigen, Ltd.

3.  Impairment.  This class is impaired and is entitled to vote upon this Plan.

**PART 3**
**PRIORITY CLAIMS AND EXPENSES OF ADMINISTRATION**

Claims entitled to administrative priority under Bankruptcy Code Sections 507(a)(2), 507(a)(3) and 507(a)(8) are not classified.  Each administrative priority claim shall be paid in full on the later of the Effective Date of this Plan or the date such claim becomes an allowed claim, unless the holder of such claim consents to different treatment; provided, however, that

Case: 13-32281   Doc# 45   Filed: 12/13/13   Entered: 12/13/13 16:24:16   Page 12 of 32

administrative claims incurred in the ordinary course of business shall be paid in accordance with the terms and conditions of any agreements pertaining thereto.

(a) <u>Professional Fees</u>. Professional fees incurred prior to confirmation of this Plan may be paid only upon approval by the Bankruptcy Court. Unpaid professional fees shall be paid on the later of the Effective Date of the Plan or upon approval by the Bankruptcy Court, unless the holder of a claim for professional fees consents to a later payment.

The Debtor anticipates that Macdonald Fernandez LLP will not hold an unpaid administrative claim on the Effective Date of the Plan by reason of certain post-petition retainers; provided, however, that the firm shall hold an administrative claim up to the amount of said retainers, as provided below. Specifically, Macdonald Fernandez LLP received a post-petition retainer in the amount of $50,000 paid by Exigen Capital. The Debtor expects that Macdonald Fernandez LLP will receive a further retainer in December, 2013. If the Trustee of the Liquidating Trust recovers any funds (net of liens and other costs, as appropriate, but prior to the payment of any professionals or employees on account of compensation or reimbursement of expenses accrued after the Effective Date), said funds shall be paid to Macdonald Fernandez LLP up to the total amount of retainers received prior to the Effective Date of the Plan. Promptly upon receipt, Macdonald Fernandez LLP shall reimburse Exigen Capital for said retainers to the extent of the funds so received.

As discussed above, the Court has not yet approved the Debtor's employment of Cotchett, Pitree & McCarthy, LLP, and any administrative priority claim that may be held by said firm is contingent upon such approval. The Debtor anticipates that any such claim will be for costs only and will be minimal.

(b) <u>U.S. Trustee Fees</u>. Any amount owed to the U.S. Trustee for fees payable under 28 U.S.C. § 1930 shall be paid in full on the Effective Date of the Plan. Commencing with the calendar quarter following the quarter in which the Effective Date occurs, the Trustee of the Liquidating Trust shall pay to the U.S. Trustee such amounts as are required to be paid under 28 U.S.C. § 1930(a)(6) until the within case is converted, dismissed, or closed. No U.S. Trustee's

Case: 13-32281    Doc# 45    Filed: 12/13/13    Entered: 12/13/13 16:24:16    Page 13 of 32

fees shall be payable for any period during which the case is closed notwithstanding any later re-opening thereof.  The Debtor estimates that the following U.S. Trustee fees will be due for the quarter in which the Effective Date occurs:

| Claim | Estimated Amount of Claim |
|---|---|
| U.S. Trustee (fees) | $650.00 |

(c)  <u>Priority Tax Claims</u>.  The Debtor shall pay priority unsecured tax claims in full on the Effective Date of the Plan.  Said claims are as follows:

| Taxing Authority | Nature of Claim | Estimated Claim |
|---|---|---|
| City and County of San Francisco Tax Collector | Payroll Taxes | $12,592.00 |
| Employment Development Department | Interest on Liability (Payroll Taxes) | $337.00 |
| California Franchise Tax Board | Corporate Taxes | $821.97 |
| | Total: | $13,750.97 |

Any other priority unsecured tax claims shall be paid as follows:  Pursuant to Bankruptcy Code Section 511, each unsecured priority tax claim shall accrue interest at the rate in effect under applicable non-bankruptcy law as of the calendar month in which the order confirming this Plan is entered.  Pursuant to Bankruptcy Code Section 1129(a)(9)(C), each unsecured priority tax claim shall be paid in full on or before October 17, 2018, in equal monthly installments commencing on the twentieth (20th) calendar day of the first full month following the Effective Date of this Plan and paid on the twentieth (20th) calendar day of each month thereafter; provided, however, that payments on account of each such claim may be made earlier, in any amount, and shall be applied as of the date received.

(d)  <u>Other Priority Claims</u>.  The Debtor shall pay other priority unsecured claims in full on the Effective Date of the Plan.  Said claims are as follows:

| Claim Holder | Nature of Claim | Estimated Claim |
|---|---|---|
| California Department of Labor and Industries | Unpaid Wage Claim | $577.00 |

*///*

*///*

14

## PART 4
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a)     Rejected Contracts or Leases.  Upon the Effective Date of this Plan, the Debtor shall reject all executory contracts and unexpired leases not by then assumed by a final order of the Bankruptcy Court.  The Debtor is aware of the following executory contracts and unexpired leases:

| Name of Counter-Party | Description of Contract/Lease |
| --- | --- |
| EquaTrax, L.P. f/k/a Royalty Services, L.P. | SRP – Services Agreement dated June 30, 2004 |
| EquaTrax, L.P. f/k/a Royalty Services, L.P. | Development Agreement dated June 30, 2004 |
| Universal Music Group, Inc. | Development Agreement dated June 30, 2004 |
| Warner Music Group, Inc. | Development Agreement dated June 30, 2004 |
| Genesys Telecommunications Laboratories, Inc. | Strategic Partnership Agreement dated December 1, 2000 |
| Exigen Properties, Inc. | Strategic Partnership Agreement dated December 1, 2000 |
| Iron Mountain | Perpetual Source Code Escrow Agreement and Object Code Escrow Agreement dated June 30, 2004 |
| TW Telecom, Inc. | Contracts for telephone and internet services and equipment (multiple locations) |
| Time Warner Companies, Inc. | Lease of office property, comprising the 17th Floor of 75 Rockefeller Plaza in New York City, New York [4] |

The last date upon which a proof of claim for damages arising from rejection of said executory contracts and unexpired leases may be filed shall be thirty (30) calendar days from the date the order confirming this Plan is entered.  Upon the Effective Date of this Plan, the Debtor shall surrender any interest in property securing said executory contracts and unexpired leases.

## PART 5
## DISPUTED AND DISALLOWED CLAIMS

The Debtor's review of claims is ongoing, and the Debtor reserves the right (for itself and on behalf of the Trustee of the Liquidating Trust) to object to any claim or interest.

---

[4] Said lease is not an unexpired lease in that the Debtor was evicted pre-petition.  Nevertheless, in the event that said lease is determined to be an unexpired lease, the Debtor rejects said lease.

15

(a)     <u>Deadline to File Proof of Claim</u>.  The deadline to file a proof of claim on behalf of non-governmental entities is February 24, 2014.  The deadline to file a proof of claim on behalf of governmental entities is April 15, 2014.

(b)     <u>Distribution on Allowed Claims Only</u>.  The Trustee of the Liquidating Trust shall make distributions only on account of allowed claims.  If a creditor has filed a proof of claim, that claim is considered disputed only if a party-in-interest files an objection to the claim or an adversary proceeding seeking disallowance of the claim.  If a party has not filed a proof of claim, but its claim is listed in the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated, such claim is considered disputed only if a party-in-interest files an objection to the claim or an adversary proceeding seeking disallowance of the claim.  A claim that is scheduled as disputed, contingent, or unliquidated is considered disputed unless the party has filed a proof of claim or the dispute has been resolved.

(c)     <u>Disputed Claims Reserve</u>.  The Trustee of the Liquidating Trust will create a reserve for disputed claims.  Each time the Trustee makes a distribution to the holders of allowed claims, the Trustee will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed.  If a disputed claim becomes an allowed claim, the Trustee shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the Plan calculated using the amount of the allowed claim.  Any funds no longer needed in reserve shall be returned to the Liquidating Trust.

(d)     <u>Settlement of Disputed Claims</u>.  The Trustee of the Liquidating Trust is authorized to settle and compromise a disputed claim in his or her sole discretion without further notice or order of the Court.

**PART 6**
**MEANS OF EXECUTION**

(a)     <u>Creation of the Liquidating Trust</u>.

The Liquidating Trust shall be formed upon confirmation of this Plan.  A copy of the Liquidating Trust Agreement is attached hereto as Exhibit "B" and incorporated by reference.

16

Upon confirmation of this Plan, the Trustee of the Liquidating Trust shall be deemed to have accepted all rights and obligations provided under this Plan. In the event of any inconsistencies or conflicts between the Liquidating Trust Agreement and this Plan, the terms of this Plan shall control.

Upon the Effective Date, [name: _____] shall be appointed Trustee of the Liquidating Trust. Any successor to the Trustee of the Liquidating Trust shall be appointed as provided in the Liquidating Trust Agreement and upon the consent of Exigen Capital. The Trustee shall serve without bond.

The Trustee of the Liquidating Trust shall be entitled to prosecute and defend any litigation now pending and any future litigation that he or she deems advisable to bring or defend and to sell, transfer and otherwise dispose of any asset of the estate, in his or her sole discretion, without further notice or order of the Court. The Trustee of the Liquidating Trust shall be further entitled to turn over collateral or leased property in return for full or partial satisfaction of claims, in his or her sole discretion, without further notice or order of the Court. The Trustee of the Liquidating Trust shall be further entitled to abandon any asset of the estate if he or she determines that such asset is burdensome to the estate or of inconsequential value and benefit to the estate, without further notice or order of the Court.

(b)     Assets Transferred to Liquidating Trust; Tax Treatment.

Upon the Effective Date of this Plan, all assets of the estate (of every kind, wherever located and by whomever possessed) shall be transferred to, and all title and interest shall vest in, the Liquidating Trust, without further notice or order of the Court and without further action by the Debtor or the Trustee of the Liquidating Trust. For federal income tax purposes, all parties (including, without limitation, the Debtor, the Trustee of the Liquidating Trust and the holders of unsecured claims allowed either before or after the Effective Date of the Plan) shall treat said transfer as a transfer to the holders of allowed claims; said holders shall be deemed to have transferred said assets to the Trust; said holders shall be deemed to have received a beneficial interest in the Trust, as provided above, in exchange for their transfer to the Trust of said assets;

17

Case: 13-32281     Doc# 45     Filed: 12/13/13     Entered: 12/13/13 16:24:16     Page 17 of 32

and said holders shall be deemed to be the trustors of the Trust. To the extent that transfers of beneficial interests in the Liquidating Trust in exchange for allowed claims are deemed an offer or sale of securities, such transfers shall be exempt from Section 5 of the Securities Act of 1933 and any state or local law requiring registration for offer of sale of a security or registration or licensing of an issuer of, underwriter or, or broker or dealer in securities pursuant to Bankruptcy Code Section 1145(a).

      (c)    <u>Exit Financing</u>.

In order to fund the administration of the Liquidating Trust, Exigen Capital shall provide exit financing, as follows: On or before the Effective Date of this Plan, Exigen Capital shall fully fund a loan to the Trustee of the Liquidating Trust in an amount not less than $75,000.00, upon the terms described below. Thereafter, Exigen Capital may (but is not required to) loan additional funds to the Trustee, upon the terms described below, upon ten (10) calendar days' notice served by mail upon the registered holders of beneficial interests in the Trust, without further order of the Court. In the event that a party in interest objects to a proposed loan of funds to be made after the Effective Date, the parties shall seek to resolve the dispute without the intervention of the Court. If the parties are unable to resolve their dispute within ten (10) calendar days after the objection is made, any party may file a motion to have the Court resolve the dispute. Said funds hall be used to pay the expenses of administering the Trust and shall not be distributed to holders of allowed claims. Said loans shall be subject to the following terms and conditions:

- Exigen Capital shall have a claim against the Liquidating Trust for the repayment of any funds loaned hereunder, which claim shall accrue interest at the rate of 3.25% per annum (calculated on the basis of a 365-day year) from the date of funding of each loan.

- Said claim shall have priority over all allowed claims except for allowed secured claims (if any) and allowed administrative priority and priority claims.

- Said claim shall be secured by liens against all assets of the Liquidating Trust, subject and junior to allowed secured claims existing immediately after the Effective Date (if any), which liens shall attach and shall be deemed perfected upon the Effective Date without

18

further notice and without recordation or filing with any governmental office; provided, however, that the Trustee of the Liquidating Trust shall execute any deed of trust, financing statement or other instrument reasonably requested by Exigen Capital for the purpose of perfecting said liens.

- Said claim shall be paid as provided in Part 6(e), below; provided, however, that all principal and interest then accrued shall become due and payable upon the earlier of: (1) the liquidation, administration or distribution of substantially all of the assets of the Liquidating Trust; (2) the termination of the Liquidating Trust; (3) the conversion of the within case to a case under Chapter 7 of the Bankruptcy Code; (4) the modification of this Plan in any way inconsistent with the terms provided in this Part 6(c); (5) the appointment of a trustee; or (6) the entry of an order granting of relief from the automatic stay to foreclose a lien or otherwise take any action against any asset, the Debtor, its estate, the Liquidating Trust or its Trustee (each a "Maturity Event"). Interest on all unpaid amounts shall accrue at the rate of 3.25% per annum (calculated on the basis of a 365-day year) from the date of any Maturity Event.

- Exigen Capital shall not have a claim for any default interest or late charges.

(d)    <u>Compensation of Trustee and Professionals</u>

The Trustee of the Liquidating Trust shall be paid reasonable compensation on an hourly basis and reimbursement of expenses. The Trustee of the Liquidating Trust shall bill his or her time in increments of $1/10^{th}$ of an hour. The compensation and reimbursement of the Trustee of the Liquidating Trust shall be entitled to administrative expense priority and shall be paid by the Trust without further notice or order of the Court.

No more than once per calendar year, commencing on the date of confirmation of this Plan, the Trustee of the Liquidating Trust may increase his or her compensation upon ten (10) calendar days' notice served by mail upon the registered holders of beneficial interests in the Trust, and only with the consent of Exigen Capital (which shall not be unreasonably withheld), without further order of the Court. In the event that a party in interest objects to the proposed increase in compensation, the parties shall seek to resolve the dispute without the intervention of the Court. If the parties are unable to resolve their dispute within ten (10) calendar days after the

19

objection is made, any party may file a motion to have the Court resolve the dispute.

The Trustee of the Liquidating Trust shall be authorized to employ any professionals and employees, including attorneys, accountants, brokers, associates and administrative staff, as the Trustee deems reasonably necessary to assist in the performance of the Trustee's duties but only with the consent of Exigen Capital (which shall not be unreasonably withheld), without further notice or order of the Court. The Trustee shall employ Macdonald Fernandez LLP to assist in the administration of the Liquidating Trust and shall employ Cotchett, Pitree & McCarthy, LLP to prosecute the Genesys Litigation. The Trustee may terminate the employment of said counsel without further notice or order of the Court, but only upon the consent of Exigen Capital, which shall not be unreasonably withheld. The Trustee and his or her professionals and employees shall bill their time in increments of 1/10th of an hour, with the exception of professionals working for a commission or contingency fee, which compensation shall be limited to a reasonable commission or fee. The compensation and reimbursement of expenses of professionals and employees of the Trustee shall have administrative expense priority and shall be paid by the Trust without further notice or order of the Court.

(e)  Liquidation of Assets; Distributions.

The Trustee of the Liquidating Trust shall liquidate or dispose of all assets of the estate (including prosecuting any pending or future litigation in the Trustee's sole discretion). From the net proceeds received by the Liquidating Trust, as provided in this Plan, the Trustee of the Liquidating Trust shall:  (1) first, pay administrative claims (unless holders of such claims consent to other treatment), including any reimbursement to be paid under Part 3(a), above; (2) second, pay priority unsecured claims, if any; (3) third, pay Exigen Capital on account of the exit financing provided above (to be applied first to interest and then to principal); (4) fourth, pay Class 1 and Class 2 claims; and (5) fifth, pay Class 3 and Class 4 claims. There shall be a distribution to holders of  allowed claims, provided that there are funds sufficient to make a distribution, within a reasonable time after liquidation of all assets of the Liquidating Trust. The Trustee of the Liquidating Trust shall be entitled to, but shall not be required to, make interim

Case: 13-32281    Doc# 45    Filed: 12/13/13    Entered: 12/13/13 16:24:16    Page 20 of 32

distributions. The Trustee shall make distributions to holders of allowed claims from the proceeds of sales or other disposition of the assets securing said claims. The Trustee of the Liquidating Trust shall be entitled to withhold from such distribution any and all amounts that the Trustee determines are required to be withheld by any law, regulation, rule, ruling, order, directive or other governmental requirement.

(f)     Transfers Subject to Applicable Non-Bankruptcy Laws.

Pursuant to Bankruptcy Code Section 1129(a)(16), all transfers of property under this Plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

(g)     Termination of Liquidating Trust.

The Liquidating Trust shall terminate within a reasonable time after liquidation, administration and distribution of its assets in accordance with this Plan and the Liquidating Trust Agreement, upon which the Trustee shall be discharged from further duties without further notice or order of the Court. The Trustee of the Liquidating Trust shall be entitled to take all steps necessary to terminate the Trust without further notice or order of the Court.

Notwithstanding the foregoing, the Trustee of the Liquidating Trust shall be discharged from further duties, at his or her election and upon ten (10) calendar days' notice served by mail upon the registered holders of beneficial interests in the Trust, at any time that the funds possessed by the Trust are less than $5,000 and if Exigen Capital refuses to fund a further loan to the Trustee within a reasonably time of a written request therefor, without further order of the Court. Nothing in this Plan shall be deemed to prevent the Trustee from seeking an order of the Court discharging him or her.

(h)     *De Minimis* Distribution; Rounding.

The Trustee of the Liquidating Trust shall not be required to make any distribution less than $10, and any amounts less than said amount shall be cumulated and distributed with the subsequent distribution. The Trustee of the Liquidating Trust shall be entitled to waive said

Case: 13-32281   Doc# 45   Filed: 12/13/13   Entered: 12/13/13 16:24:16   Page 21 of 32

minimum as to a particular distribution if a request therefor is made in writing within thirty (30) calendar days after such distribution.  Notwithstanding the foregoing, a payment of less than $10 shall be made if it is the only payment, or the final payment, that will be made on account of a beneficial interest in the Liquidating Trust.  The Trustee of the Liquidating Trust shall be entitled to round the amount of any distribution down to the nearest whole dollar.

       (i)    <u>Undistributed Property</u>.

If any distribution is returned to the Trustee of the Liquidating Trust, no further distributions shall be made to the holder of the beneficial interest in the Trust on account of whom such distribution was made unless the Trustee is notified in writing of such holder's current address.  Any returned distribution shall be held for the benefit of such holder for thirty (30) calendar days, following which such holder shall be deemed to have waived, and shall not be entitled to, said distribution, and said distribution shall become a general asset of the Liquidating Trust to be distributed in accordance with this Plan.  Nothing in this Plan shall require the Trustee of the Liquidating Trust to attempt to locate any holder of such interests.

Any property that remains undeliverable to the holders of beneficial interests in the Liquidating Trust as of the ninetieth (90th) calendar day following liquidation or disposition of substantially all of the assets of the Trust, or upon the fifth (5th) anniversary of the Effective Date of this Plan (unless extended by order of the Court) if substantially all assets of the Trust have been liquidated or disposed of, shall be distributed to other holders of such interests or to Exigen, Ltd., in accordance with this Plan, notwithstanding any federal or state escheat laws to the contrary.  Thereafter, if the Liquidating Trust possesses funds or assets not duly claimed, or if it would not be cost effective to make a final distribution, such property shall be donated to a public charity that is tax exempt under Internal Revenue Code Section 501(c)(3) of the choosing of the Trustee.

**PART 7**
**LIQUIDATION ANALYSIS**

The following liquidation analysis compares the amounts the Debtor estimates general

Case: 13-32281    Doc# 45    Filed: 12/13/13    Entered: 12/13/13 16:24:16    Page 22 of 32

unsecured creditors will receive pursuant to the Plan with the amounts said creditors are likely to receive in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code. The assets and liabilities described below are estimated for the purposes of this analysis only and are not binding.

The value of several of the Debtor's assets is unknown, and this liquidation analysis assumes that the disposition of such assets will not generate any proceeds. The Debtor estimates that the professional fees and costs of the Trustee of the Liquidating Trust will be $50,000.00.

The Debtor believes that the specialized skill of the Trustee of the Liquidating Trust and the flexibility of the Plan will result in greater recoveries for general unsecured creditors than liquidation under Chapter 7. However, this liquidation analysis uses conservative assumptions, including assuming: (1) that a hypothetical chapter 7 trustee will meet with the same level of success in prosecuting claims and liquidating assets as the Trustee of the Liquidating Trust; and (2) that a chapter 7 trustee will recover 100% of the book value of all assets (book value is indicated where used). Such assumptions are made for the purposes of this analysis only.

| Assets | Estimated Value |
|---|---|
| Cash | $0.00 |
| Accounts Receivable and Intercompany Receivables (estimated book value; actual value estimated to be $100,000 to $200,000) | $7,325,621.00 |
| Office Furnishings (Debtor's estimate, not appraised) | $35,000.00 |
| Genesys Litigation (Debtor's share of recovery unknown) | $30,000,000.00 |
| Fraudulent Conveyance Action | Unknown |
| Counterclaim Against UMI, Universal Music Group, Inc. and EquaTrax, L.P. | Unknown |
| 599,432 Common Stock in Return on Intelligence, Ltd. n/k/a Exigen Services, Ltd. | $8,392.05 |
| Loans to EbIT, Elite, EM US, EMAM, ExS and CC (estimated book value; actual value unknown) | $1,687,000.00 |
| 100% of Shares in Non-Operating Subsidiaries: Mobilae, Inc.; Exigen Services, Inc.; IntelliEngine, Inc. | $0.00 |
| Trade secrets, methodologies, know-how and other intellectual property re Computer Telephony Integration (CTI) system integration | Unknown |
| License to Genesys Telecommunications Laboratories, Inc.'s Call Center Licenses | Unknown |
| Automobile Liability Insurance Coverage | Unknown |

23

| | |
|---|---|
| Commercial Umbrella Policy (insurance) | Unknown |
| Customarq Classic Insurance Program | Unknown |
| Worker's Compensation and Employers' Liability Policy | Unknown |
| **Total:** | **$39,056,013.05** |

| Chapter 11 Liabilities | Estimated Amount |
|---|---|
| Costs of Administering Liquidating Trust | $50,000.00 |
| Special Counsel (contingency fee of $7,740,000.00 and costs of $50,000) | $7,790,000.00 |
| Priority Tax Claims | $13,750.97 |
| Other Priority Claims | $577.00 |
| U.S. Trustee Fees | $650.00 |
| **Total:** | **$7,854,977.97** |

| Chapter 7 Liabilities | Estimated Amount |
|---|---|
| Chapter 7 Trustee Commission (11 U.S.C. § 326(a)) | $1,194,870.39 |
| Special Counsel (contingency fee of $7,740,000.00 and costs of $50,000) | $7,790,000.00 |
| Other Priority Claims | $577.00 |
| Priority Tax Claims | $16,334.02 |
| **Total:** | **$9,001,781.41** |

| Comparison of Estimated Distributions | Amount | Ratio |
|---|---|---|
| Total Estimated General Unsecured Claims (including disputed claims and insiders) | $45,182,276.56 | |
| Estimated Distribution to General Unsecured Creditors Pursuant to Chapter 11 Plan | $31,201,035.08 | 69% |
| Estimated Distribution to General Unsecured Creditors in Chapter 7 Liquidation | $30,054,231.64 | 67% |

## PART 8
## VOTING

(a)     <u>Who May Vote</u>.  Creditors are entitled to vote on confirmation of the Plan unless

24

(i) the class is unimpaired (presumed to accept) or is to receive no distribution (presumed to reject); (ii) an objection or adversary proceeding as been filed with respect to that creditor's claim; or (iii) the claim is unclassified (required by law to be paid in full).  A creditor whose claim has been objected to and who wishes to vote must move to have its claim allowed for voting purposes by filing a motion for such relief in time for that motion to be heard at or before the confirmation meeting.

(b)    How to Vote.  All ballots must be **received** by Debtor's counsel on or before 6:00 pm on _____, 2013.  Ballots must be delivered by mail and addressed as follows:

> Macdonald Fernandez LLP
> Attention:  Reno Fernandez
> 221 Sansome Street, Third Floor
> San Francisco, CA  94104

(c)    Effect of Vote.  The Plan will be confirmed only if it is accepted by each impaired class, or if it is accepted by at least one impaired class (exclusive of insiders) and the court determines it is fair and equitable to all dissenting classes.  A class of creditors accepts the Plan if it is accepted by a majority in number and two-thirds in dollar amount of creditors who cast ballots.  A class of interests accepts the Plan if it is accepted by two-thirds in dollar amount of interest holders who cast ballots.  The Proponents  reserve the right to seek confirmation of the Plan notwithstanding the rejection of the Plan by one or more classes of creditors pursuant to Bankruptcy Code Section 1129(b).

## PART 9
## TRANSFERS NOT SUBJECT TO TAX

Pursuant to Bankruptcy Code Section 1146, the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by this Plan, including, without limitation, any transfers to or by the Liquidating Trust or the Trustee of the Liquidating Trust, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument may be recorded hereunder shall, pursuant to the order confirming the Plan, be ordered and directed to accept such instrument

Case: 13-32281   Doc# 45   Filed: 12/13/13   Entered: 12/13/13 16:24:16   Page 25 of 32

without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

## PART 10
## EFFECT OF CONFIRMATION

(a)  <u>Dissolution</u>.  Upon the Effective Date of the Plan, the Debtor shall be deemed to have been wound up and dissolved.  The Trustee of the Liquidating Trust shall be entitled to take all steps necessary on behalf of the Debtor to effectuate such winding up and dissolution, including executing, filing or recording any instruments or documents with the Secretary of State of California and any other public or private entity, without any action or approval by the board of directors of the Debtor or its officers or shareholders.  Upon the Effective Date of this Plan, the Responsible Individual and all officers, directors, employees and professionals of the Debtor shall be discharged from such capacities.

(b)  <u>Vesting of Property</u>.  Upon confirmation of the Plan, all property of the estate shall vest in the Liquidating Trust free and clear of all claims and interests, except as provided in this Plan, pursuant to Bankruptcy Code Section 1141.

(c)  <u>Plan Creates New Obligations</u>.  The obligations that are provided in the confirmed Plan replace those obligations of the Debtor to creditors that existed prior to the Effective Date of the Plan.  The obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-bankruptcy law, subject to the provisions hereof.  The Liquidating Trust shall not have any liability to any creditors or other parties in interest other than to administer the assets that vest in the Liquidating Trust on and after the Effective Date and make the distributions expressly provided for in this Plan.

(d)  <u>Creditor Action Restrained</u>.  The confirmed Plan is binding on every creditor whose claims are provided for in this Plan, and a creditor may not take any action to enforce any pre-confirmation obligation except as provided in this Plan.

(e)  <u>Effect of Conversion to Chapter 7</u>.  If the case is at any time converted to one

26

under Chapter 7: (i) all property of the estate as of the date of conversion, whether acquired pre-confirmation or post-confirmation, shall vest in the Chapter 7 bankruptcy estate; and (ii) all creditors, whether their claims arose pre-confirmation or post-confirmation, shall be prohibited from taking action against the Chapter 7 bankruptcy estate or property of the estate by Bankruptcy Code Section 362(a).

## PART 11
## CLAIMS RESERVED

As discussed in Part 1, above, the Debtor holds or asserts claims against: Genesys Telecommunication Laboratories, Inc.; EBIT; Exigen Elite; EM US; EMAM; ExS; CC; Collabra Inc.; ExiFAST Collabra; ExiFast Inc.; Exigen Canada Inc.; Exigen Capital Management LLC; Exigen Communications Services; Exigen Expert Markets; Exigen Expert Markets Canada; Exigen Insurance Solutions; Exigen Services Ltd.; Locust Walk Capital; and Royalty Services LP. This list is not exclusive, and the Debtor may holds claims and counterclaims against other persons or entities presently unknown to the Debtor, including any counterclaims related to the claims described above as disputed. All such claims, and all rights pertaining thereto, including any and all claims against insiders of the Debtor, are reserved hereby (and included in the term "Reserved Claims," defined below).

The Trustee of the Liquidating Trust shall succeed to all rights against any third parties, and interests in any real or personal property, wherever located and by whomever possessed, whether arising from bankruptcy or non-bankruptcy law, including the following: causes of action; claims; counterclaims; defenses; rights of offset or recoupment; privileges; licenses; powers, rights and entitlements arising under contract, law or equity; objections to claims; objections to the validity, priority, amount, allowance or classification of any claim (including but not limited to proceedings under Bankruptcy Code Sections 501, 502, 503, 506 and 507); rights to seek equitable or contractual subordination of claims; rights to avoid and recover prepetition or postpetition transfers (including but not limited to those arising under Bankruptcy Code Section 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553); claims related to taxes; rights to file tax returns and amended returns; rights to seek tax determinations, including, without limitation,

27

tax loss carryback claims, net operating loss claims, determinations of basis or depreciation, overpayment claims, offset and counterclaims; claims, causes of action and defenses against or with respect to financial institutions and any other person for the turnover of funds of, or due to, the estate; and claims, causes of action and defenses for coverage in or under any and all insurance policies of the Debtor, under which the Debtor is a beneficiary or against which the Debtor holds a claim (collectively, the "Reserved Claims").

## PART 12
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction: (a) to determine whether the Debtor has defaulted in performance of any obligation under this Plan; (b) to determine whether the time for performing any obligation should be extended; (c) to determine whether the case should be converted to one under Chapter 7, and proceedings following any such conversion; (d) to estimate the amount of any claim, to determine any and all objections to the validity, priority, amount or allowance of claims and to determine any motion, action or adversary proceeding concerning the classification or subordination of claims; (e) to determine the validity, priority, and amount of administrative priority claims, and any and all applications for allowance of compensation or reimbursement of expenses and any other fees and expenses authorized to paid or reimbursed under the Bankruptcy Code, this Plan or the Liquidating Trust Agreement; (f) to determine any and all applications, motions, adversary proceedings, and contested or litigated matters arising in or related to the within case, whether pending before the Court on the date of confirmation or not, including, without limitation, avoidance actions under the Bankruptcy Code and other applicable law; (g) over any actions pertaining to any Reserved Claims; (h) to determine the extent, validity, priority or amount of any lien asserted against property of the estate; (i) to determine matters related to the collection, liquidation, realization upon and enforcement of rights regarding property of the estate or the Liquidating Trust; (j) to resolve any motion of the Trustee of the Liquidating Trust seeking instruction or approval of any matter affecting the administration of the Liquidating Trust; (k) to enforce, interpret, and modify the Plan, any agreement made under the Plan, or the order confirming the Plan; (l) to remedy any defect or omission, or to reconcile any inconsistency in the

Case: 13-32281    Doc# 45    Filed: 12/13/13    Entered: 12/13/13 16:24:16    Page 28 of 32

Plan, the order confirming the Plan or any other order of the Court; (m) to determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, implementation, consummation, or administration of the Plan or the order confirming the Plan; (n) to enter a final decree closing the within case; (o) to determine such other matters as may arise in connection with the Plan or the order confirming the Plan and to issue orders regarding, and in furtherance of, execution and consummation of the Plan, the Liquidating Trust, and the order confirming the Plan; (p) to determine, as is necessary or appropriate under Bankruptcy Code Section 505 or otherwise, matters relating to tax returns filed or to be filed on behalf of the estate or the Liquidating Trust for all periods through the end of the fiscal year in which the within case is closed; (q) to hear and determine any disputes regarding assets of the estate or the Liquidating Trust, wherever located; (r) to hear and determine any disputes regarding the Liquidating Trust or the Trustee of the Liquidating Trust, and to authorize the Trustee of the Liquidating Trust to take actions consistent with the Plan or the order confirming the Plan; (s) to authorize and approve, or disapprove, any settlements or compromises of claims, causes of action, defenses, or controversies asserted by or against the estate, and the sale, lease or other disposition of property of the estate; (t) to enter orders confirming the appointment of a successor to or replacement of the Trustee of the Liquidating Trust; (u) to enter such orders as may be appropriate in the event the order confirming the Plan is for any reason stayed, revoked, modified, rescinded or vacated; (v) to determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date of the Plan and the allowance of any claims resulting therefrom; and (w) to issue and enforce injunctions, make determinations of declaratory relief, or take such other legal or equitable actions or issue such other orders as may be necessary or appropriate to restrain interference with the Plan, the order confirming the Plan, any sale or other action provided under the Plan, the estate, the Liquidating Trust, the Trustee of the Liquidating Trust and any professional employed by the Debtor or the Trustee of the Liquidating Trust.

///

29

(a) <u>Effective Date of Plan</u>. The effective date of the Plan shall be the first business day after the fourteenth (14th) calendar day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed (the "Effective Date"). If a notice of appeal has been filed, the Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date shall be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Plan Term</u>. The term of this Plan shall be the earlier of: (1) until the administration of the Liquidating Trust is completed; or (2) five (5) years from the Effective Date, unless extended by the Court.

(c) <u>U.S. Trustee Quarterly Reports</u>. The Trustee of the Liquidating Trust shall file and serve upon holders of beneficial interests in the Trust the Quarterly Post-Confirmation Reports required by Section 7.2 of the Guidelines of the Office of the United States Trustee until a final decree has been entered.

(d) <u>Cramdown</u>. Pursuant to Bankruptcy Code Section 1129(b), the Proponents reserve the right to seek confirmation of the Plan notwithstanding the rejection of the Plan by one or more classes of creditors.

(e) <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(f) <u>Amendment</u>. This Plan may be altered, amended or modified by the Proponents before or after confirmation in the manner provided under Bankruptcy Code Section 1127. A holder of a claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as altered, amended or modified, unless within the time fixed by the Court, such holder changes its previous acceptance or rejection by written notice

Case: 13-32281   Doc# 45   Filed: 12/13/13   Entered: 12/13/13 16:24:16   Page 30 of 32

served upon the Debtor.

(g) <u>Binding Effect</u>.  The provisions of this Plan shall bind the Debtor, the Liquidating Trust, the Trustee of the Liquidating Trust and any person or entity asserting a claim against the Debtor, the Liquidating Trust and any of the assets of the estate or the Liquidating Trust, whether or not the claim is impaired under this Plan, whether or not the claim is allowed, and whether or not such person or entity has accepted the Plan.  The rights and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of the successors or assigns of such entity, including any chapter 7 or chapter 11 trustee.

(h) <u>Captions</u>.  The heading contained in the Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

(i) <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

(j) <u>Notices</u>.  Any notice to the Debtor shall be in writing and mailed, and shall be deemed to have been given three days after the date sent by first class mail, postage prepaid and addressed as follows:

EXIGEN (USA), INC.<br>
c/o Macdonald Fernandez LLP<br>
Attention:  Reno Fernandez<br>
221 Sansome Street, Third Floor<br>
San Francisco, CA  94104

Any notice to the Trustee of the Liquidating Trust shall be in writing and mailed, and shall be deemed to have been given three days after the date sent by first class mail, postage prepaid and addressed as follows:

[Name: _____]<br>
Trustee of the Exigen USA Liquidating Trust<br>
_____<br>
_____

(k) <u>No Waiver of Claims</u>.  Confirmation of this Plan effects no settlement,

Case: 13-32281   Doc# 45   Filed: 12/13/13   Entered: 12/13/13 16:24:16   Page 31 of 32

compromise, waiver or release of any claim or cause of action unless specifically provided this Plan or the order confirming this Plan. The nondisclosure of any particular claim or cause of action, including, but not limited to, any of the Litigation Claims, shall not be construed as a settlement, compromise, waiver or release of such claims or cause of action.

## PART 14
## FEASIBILITY STATEMENT

The funds projected to be available, and the amounts to be paid, on the Effective Date of this Plan are as follows:

|  | Amount | Amount |
|---|---|---|
| Projected Total Cash on Hand on Effective Date |  | $75,000.00 |
| Payments on Effective Date |  |  |
| Administrative Priority Claims | $0.00 |  |
| Priority Tax Claims | $13,750.97 |  |
| Other Priority Claims | $577.00 |  |
| U.S. Trustee Fees | $650.00 |  |
| Total Payments on Effective Date |  | $14,561.02 |
| Net Cash on Effective Date |  | $60,022.03 |

DATED: December 13, 2013

EXIGEN (USA), INC.                                        MACDONALD FERNANDEZ LLP


By:/s/ Alexander Novak                                   By:/s/ Iain A. Macdonald
    Alexander Novak                                         Iain A. Macdonald
    Responsible Individual for                              Attorneys for Debtor-in-Possession
    Debtor-in-Possession

EXIGEN CAPITAL, L.P.

  By: Exigen Capital (GP), L.P.,
     its general partner

    By: Exigen Capital (GPLLC) LLC,
       its general partner


    By: _____
       Name:  Sergiy Synyanskyy
       Title:    Manager

Case: 13-32281   Doc# 45   Filed: 12/13/13   Entered: 12/13/13 16:24:16   Page 32 of 32